**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VIKTORIYA R.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 24 C 6595** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **MARTIN J. O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, over two and a half years ago in July 2022, alleging she became disabled on September 1, 2020 (Administrative Record (R.) 200-201) – due to "severe depression, severe anxiety, diastolic heart murmur, polysistic ovarian syndrome, Uncontrolled diabetes type 2, Hyperlipidemia, obesity, Thyroid, Insomia." (R. 226). Over the next two years, plaintiff's Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. *See* 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on July 29, 2024, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on August 8, 2024. [Dkt. #7]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

**I.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: obesity; major depressive disorder; generalized anxiety disorder; and developmental disorder of scholastic skills. (R. 19-20). The ALJ determined that the plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, specifically considering Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders) and 12.11 (neurodevelopmental disorders). (R. 26). In the areas of mental functioning, the ALJ found that plaintiff had a mild limitation in understanding, remembering or applying information; and moderate limitations in interacting with others; in concentrating, persisting or maintaining pace; and in adapting or managing oneself. (R. 21-22).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to capacity to perform light work following limitations:

> the [plaintiff] can never climb ladders, ropes or scaffolds; occasional climbing ramps/stairs; occasional balancing, stooping, kneeling, crouching, and crawling; avoid work with unprotected heights and dangerous moving machinery. The [plaintiff] can understand, remember, and carry out simple work instructions; is able to sustain the necessary attention and concentration in 2 hour increments throughout the day to sustain simple job duties assuming typical workday breaks. The [plaintiff] can make simple work-related decisions; can respond appropriately to supervision, can interact with co-workers and general public occasional, brief and largely task-specific (versus collaborative), and no team or tandem work, nor work tasks with negotiation or persuasion; should work in a routine work setting, and the [plaintiff] is able to deal with occasional changes.

(R. 23). The ALJ summarized the plaintiff's allegations and testimony and found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms",

but that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 23-24). The ALJ then reviewed the medical record in some detail (R. 24-29), and considered the medical opinions from state agency psychological and medical consultants and plaintiff's healthcare providers. (R. 30-33).

Next, the ALJ relied on the testimony of the vocational expert to find that, although the plaintiff could no longer perform her past work as an accounts clerk (R. 33-34), there were other jobs she could perform that existed in significant numbers in the national economy. (R. 34). Examples the vocational expert provided were laundry sorter (DOT #361.687-014) with 90,000 jobs in the national economy; gasket inspector (DOT #739.687-102) with 70,000 jobs in the national economy; and assembler I (DOT #706.684-022) with 60,000 jobs in the national economy. (R. 34). Accordingly, the ALJ concluded that the plaintiff was not disabled and not entitled to benefits under the Act. (R. 35).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The substantial evidence standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023); *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."). But, in the Seventh Circuit, the ALJ also has an obligation to build a "logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). While this requirement has been described as "lax", *Crowell*, 72 F.4th at 816; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), the Seventh Circuit has also explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge."

*Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash. Indeed, the Seventh Circuit's opinion in *Jarnutowski*, 48 F.4th 769, exemplifies this subjectivity. Two judges on that panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did, as did the Magistrate Judge who had reviewed the ALJ's decision (by consent) at the district court level. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court explained that the ALJ had to:

> explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

766 F.2d at 287.

More recently, the Seventh Circuit has again emphasized that all ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). The court has explained "that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053; *see also Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. May 31, 2024)(". . . ALJs are 'subject to only the most minimal of articulation requirements'—an obligation that extends no further than grounding a decision in substantial evidence."). So, as ever, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the

6

path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). Unfortunately, in this instance, the ALJ did not do enough.

### III.

### A.

As just discussed with reference to the varying views of an ALJ's decision in *Jarnutowski*, "logical bridges" aren't one-size-fits-all. Some reviewers demand more explanation than others, and although each is reviewing the ALJ's decisions *de novo*. In terms of what constitutes an adequate "logical bridge," every *de novo* reviewer is different because every medical record is different. Some depict young people, unfamiliar with the demands of work, who are troubled by no more than a couple of mild impairments. Records like those allow a court, without much hand-holding, to follow the reasoning of an ALJ who finds such an individual able to work on a daily basis. In those cases, there is not much of a "bridge" needed to make it from one side to the other, and review is not difficult. Again, it is not a one-size-fits-all proposition.

Records detailing psychological impairments present more difficult cases for review and "logical bridge" building. A great deal of these records consist of mini-mental status exams. The kind where a mental health care provider rattles off brief assessments of mood, affect, thought process, thought content, judgment, and insight. But the information such assessments provide can often be less than helpful in assessing an application for disability benefits. Does "depressed" mood or "flat" affect mean a person cannot work? Does a "normal" thought process mean they can? What about fair or poor judgment and insight? Mental health care providers' notes are simply not geared toward ALJs, magistrate judges, or appellate court judges. They have other concerns on their minds when compiling notes on their patients' treatments.

Another challenging aspect of these records is the subjective nature of the medical evidence. There are no x-rays or MRIs for psychological impairments. Mental health assessments are based on the plaintiff's subjective complaints, *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019); *Knapp v. Berryhill*, 741 F. App'x 324, 328 (7th Cir. 2018); *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015), and thus often viewed with a fair degree of skepticism when a plaintiff is alleging physical impairments. Disability claimants often have an incentive to lie or exaggerate. *Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016); *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015); *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). In such instances, there is a long line of caselaw holding that an ALJ can properly reject a doctor's opinion if it is based on a plaintiff's subjective complaints. *Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023)(". . . where a treating physician's opinion is based on the claimant's subjective complaints, the ALJ may discount it."); *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022)("... when a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion."); *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013)("The question of which physician's report to credit thus collapses into the credibility issue . . . ."); *Karr*, 989 F.3d at 512 ("... an ALJ does not owe any deference to the portion of a treating physician's opinion based solely on the claimant's subjective complaints."); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) ("... subjective complaints are the opposite of objective medical evidence and, while relevant, do not compel the ALJ to accept [a treating medical provider's] assessment"). At times, then, it can seem that the law deems a psychologist to have insight far beyond that of a neurologist or an orthopaedic surgeon, or a cardiac specialist. But, not always. In *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019), for example, the Seventh Circuit found it appropriate for an ALJ to discount a mental health opinion when it was based on a plaintiff's

8

subjective complaints. 923 F.3d at 478. In any event, a disability case based on mental impairments, because it is based on subjective allegations, presents both ALJs and reviewing courts with a difficult task.

### B.

But, this record is a rare instance where we have a bit more to go on then a therapist asking, "what kind mood are you in", and a plaintiff answering, "sad." Over the course of two days – June 16 and 17, 2021– the plaintiff underwent extensive testing with Alex Reynish, Psy.D. Her verbal IQ was 92. That's in the bottom 30%, which is the low end of average verbal abilities. Her performance IQ of 73 was far worse; it was in the bottom 4%. That's the very limited borderline range for non-verbal tasks. WASI testing revealed she had marked limitations in fact integration, pattern recognition, part/whole relationships, nonverbal logic, conceptualization, and reasoning highly suggestive of a cognitive deficit and social difficulties (R. 754). Her Attention Index testing score of just 49 placed her in the markedly impaired range of functioning. She scored in the bottom 1% in recalling digits, and the bottom 2 % in motor speed, visual attention, divided attention, and mental flexibility. Memory and learning testing showed her to be markedly impaired, in the bottom 4%. (R. 755). In several other areas, the plaintiff scored in similar markedly impaired ranges, at or near the bottom percentiles. (R. 756-60). All this is – bottom 1%, bottom 2%, bottom 4%, even bottom 30% – is rather significant evidence that the plaintiff is disabled. And, while it may not be completely objective, it is certainly a lot more probative than "I'm sad" or "I can't focus."

Of course, an ALJ cannot simply ignore a line of evidence that supports a finding of disability. *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023); *Grotts*, 27 F.4th at 1278; *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). While the ALJ did not ignore Dr. Reynish's testing

here – she summarized it in her opinion (R. 25-26) – it has to be said that, at best, she gave it very short shrift. It's clear that she did not think much of the testing results given her findings, but her explanation for why she did not think much of them leaves a lot to be desired in terms of a logical bridge. Again, those test results all seemed to point in one direction: disability. Even in the days before *Sarchet* and "logical bridges" – days the Seventh Circuit has seeming harkened back to in cases like *Warnell* and *Morales* – "a minimal level of articulation of the ALJ's assessment of the evidence [wa]s required in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79.

Here, the ALJ summarized the test results, which is entirely acceptable. *See Grotts*, 27 F.4th at 1278("An ALJ need not discuss every detail in the record as it relates to every factor.... Summaries of medical evidence, while definitionally 'partial and selective,' are appropriate."); *Gedatus*, 994 F.3d at 901 (7th Cir. 2021)("... if [plaintiff] is complaining that the ALJ summarized the medical evidence, that is unavailing because summaries are appropriate."). But, only to a point. After summarization, the ALJ just left the tests result there, without meaningful comment, like an elephant in the room. Significantly, her summary seemed to ignore the tests that show the plaintiff's functioning was in the bottom 1 or 2% in terms of attention and bottom 4% in terms of memory. That's the very definition of "considerable evidence . . . to counter the agency's position." *Zblewski*, 732 F.2d at 79. Instead, the ALJ appeared to be more impressed with the plaintiff's ability to have a conversation with Dr. Reynish and that she could maintain eye contact. (R. 25). That's not considerable at all.

Moreover, the ALJ did not even mention those extremely poor results when she assessed the plaintiff's abilities to understand, remember, and apply information (R. 21), or her ability to

10

concentrate, persist, and maintain pace. (R. 22). Yet, those test results would seem to be specifically geared toward those areas of functioning. Instead, in terms of to understanding, remembering, and applying information, the ALJ rather dismissively acknowledged that Dr. Reynish conducted such testing, but rather than address the dire results, said it was somehow trumped by what the ALJ claimed were a couple of notations from the doctor that plaintiff "was able to follow instructions." (R. 21). That is not very convincing reasoning and it completely falls apart when the pages the ALJ cites – R. 817, 819, 823 – say nothing about following instruction but do say that plaintiff had no more than a marginal ability to function and that her ability to sustain focus was poor. The ALJ also found it rather significant that the plaintiff was able to get a two-year associates degree in the mid-1990s. (R. 21). But, that was a quarter century before the plaintiff claims she was no longer able to work. Again, the reasoning is simply not convincing. If the plaintiff were a track star in college, does that mean she could not possibly have debilitating arthritis later in life?

The ALJ took a similarly dismissive tack when assessing plaintiff's concentration, persistence, and pace. She questioned Dr. Reynish's findings because he did not recommend more intensive treatment. (R. 22). But plaintiff was regularly seeing two mental health care providers and taking three different medications for her psychological impairments – Fluoxetine (Prozac), Xanax, Lunesta. (R. 762-860). Indeed, in the course of just over two years, July 8, 2021 (R.808) through August 31, 2023 (R. 826), the plaintiff saw Dr. Reynish nearly one hundred times. (R. 762-860). That's a lot of treatment. One might even say it seem rather "intensive." What more the ALJ wanted is not entirely clear, although the ALJ does offer a hint or two.

It would seem that the ALJ felt that the more intensive treatment necessary to support a finding of disability would have been psychiatric hospitalizations. She repeatedly noted that there

11

had been none. (R. 22, 24, 26). But that type of reasoning has been rejected time and again. *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011)("Concluding that the claimant 'is not a raving maniac who needs to be locked up' is a far cry from concluding that she suffers no limits on her ability to function."); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

Given the foregoing discussion, this matter has to be remanded. None of this is to say that the ALJ had to accept the test results. But, it is to say that she had to offer good reasons for dismissing them. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021); *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). Those test results run counter to the ALJ's Step Three findings and her ultimate conclusion. They also provide support for not only the opinion from Dr. Reynish, but the opinion of Dr. Shvartsman as well. (R. 750). Once again, we harken back to those days before the "logical bridge" approach of the Seventh Circuit:

> While there may be strong grounds upon which the ALJ rejected claimant's evidence in this case, . . . we cannot say on the basis of the record that such a conclusion is self-evident. In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation.

*Zblewski*, 732 F.2d at 78–79. Given the extensive testing and the very poor results, this is an instance where more of a logical bridge – "an explicit and reasoned rejection" of those results – was more necessary than might otherwise be the case.

**CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #22] is

denied, and the ALJ's decision is remanded to the Commissioner for further proceedings.

**ENTERED:**_____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/6/25

13